UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **MELISSA DOUGLAS et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 20-cv-11740-DJC** |
| **EF INSTITUTE FOR CULTURAL** | ) | |
| **EXCHANGE, INC. et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                          **February 14, 2023**

## I.      Introduction

Plaintiffs Melissa Douglas, Thomas Aikins and Sarah Kahl, on behalf of themselves and a

purported class (collectively, "Plaintiffs") have filed this lawsuit against Defendants EF Education

First International, Ltd., EF Institute for Cultural Exchange, Inc. and EF Explore America, Inc.

(collectively, "Defendants" or "EF Tours") alleging violations of Mass. Gen. L. c. 93A.  D. 60.

Plaintiffs seek class certification, an injunction against EF Tours and an order requiring EF Tours

to offer each class member the options required under 940 C.M.R. § 15.06.  Id. at 16–17.

Defendants have moved to dismiss and to strike the class allegations.  D. 152.  For the reasons

stated below, the Court DENIES the motion.

## II.      Standard of Review

Under Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss a complaint for lack of

subject matter jurisdiction.  "[T]he party invoking the jurisdiction of a federal court carries the

burden of proving its existence."  Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)

(quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)) (internal quotation marks omitted).  When confronted with such a motion, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff."  Aversa v. United States, 99 F.3d 1200, 1209–10 (1st Cir. 1996) (citing Murphy, 45 F.3d at 522).  The Court, however, may widen its gaze and look beyond the pleadings to determine jurisdiction.  Martínez-Rivera v. Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016) (citing cases for the proposition that the Court can "rely on facts outside of the pleadings" to decide a Rule 12(b)(1) motion).

District courts have the authority under Fed. R. Civ. P. 12(f) to delete the complaint's class allegations at the pleading stage "[i]f it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis."  Manning v. Boston Medical Center Corp., 725 F.3d 34, 59 (1st Cir. 2013) (citation omitted).

III.   **Factual and Procedural Background**

The allegations in the second amended complaint, D. 60, are accepted as true for the purposes of resolving the motion to dismiss.  Since the Court recited these allegations in its prior Memorandum and Order on EF Tours' first motion to dismiss the still operative complaint, D. 60, the Court will not repeat those allegations but will incorporate them by reference, D. 94 at 2–6.

IV.     **Procedural History**

The original lead plaintiff instituted this action in the District Court for the Southern District of California.  See D. 1.  In September 2020, the case was transferred to this Court.  D. 40; D. 41.  Plaintiffs filed their second amended complaint on December 7, 2020.  D. 60.  Defendants moved to dismiss, D. 75, and the Court denied the motion, D. 94.  Defendants also moved to certify questions to the Massachusetts Supreme Judicial Court, D. 108, and the Court denied the motion, D. 147.  Plaintiffs moved to amend the second amended complaint, D. 121, and the Court denied the motion, D. 148.  Defendants have now moved to dismiss the second amended complaint again for lack of standing and to strike the class allegations.  D. 152.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 187.

V.      **Discussion**

A.      **Plaintiffs' Article III Standing**

Plaintiffs bring a single claim under Mass. Gen. L. c. 93A ("Chapter 93A") based on an alleged violation of 940 C.M.R. § 15.06 ("Section 15.06").  D. 60 ¶¶ 78–79.  Section 15.06, requires that, where "a seller of travel services is acting as a tour operator, and the seller fails to provide any of the travel services that a consumer has purchased directly or indirectly," the seller must offer the consumer their choice of:

> (1) [a refund in] cash an amount equal to the fair market retail value of any undelivered, purchased travel service . . . ; or (2) specially identified substitution travel service of equal or greater fair market retail value for any undelivered, purchased travel service, at no additional cost to the consumer; or . . . (3) specially identified substitute travel service of lower fair market retail value for any undelivered, purchased travel service, and refund to the consumer in cash an amount equal to the difference in the fair market retail prices of the purchased and the substitute travel services . . . .

940 C.M.R. § 15.06.  When regulations define such acts or practices, evidence showing "violations [of the Attorney General's Regulations] qualify as unfair or deceptive acts" as a matter of law.

3

Casavant v. Norwegian Cruise Line, Ltd., 460 Mass. 500, 504 (2011) (reversing trial judge's determination that no Chapter 93A violation occurred when evidence at trial showed regulatory violation);  D. 94 at 13-15 (discussing Casavant).

Plaintiffs allege that Defendants acted unfairly and deceptively when Defendants failed to honor Plaintiffs' election of full cash refunds after Defendants canceled the tours Plaintiffs purchased in response to the COVID-19 pandemic.  D. 60 ¶¶ 78–79.  Defendants argue that Plaintiffs lack standing because the allegations on the face of the second amended complaint and documents produced in discovery demonstrate that Defendants postponed, rather than canceled, the trips and that it was the Plaintiffs who canceled, or their Group Leaders who rescheduled, their children's travel.  D. 158 at 13–18.

"Standing is a threshold question in every case; '[i]f a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case.'"  Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc., No. 21-cv-11269-FDS, 2022 WL 4597526, at *8 (D. Mass. Sept. 30, 2022) (quoting United States v. AVX Corp., 962 F.2d 108, 113 (1st Cir. 1992)).  "To satisfy the case-or-controversy requirement of Article III of the Constitution, plaintiffs bear the burden of establishing that they (1) have suffered an injury-in-fact that is concrete and particularized and actual or imminent; (2) that the injury is fairly traceable to the actions of the defendant; and (3) that the injury will likely be redressed by a favorable decision."  Id. (quoting Bennett v. Spear, 520 U.S. 154, 167 (1997)) (internal citation and quotation marks omitted).

The Court sees no basis for finding now that Plaintiffs lack standing based on the face of the second amended complaint.  In their prior motion to dismiss, Defendants argued that Plaintiffs "fail to allege a single actionable act or omission prohibited by Chapter 93A itself."  D. 76 at 22.  In denying that motion, the Court, however, ruled that "Plaintiffs' claim that Defendants failed to

offer the choice of a full refund for undelivered travel services is adequately pled, including as to

. . . an unfair or deceptive act." D. 94 at 14.  In concluding that Plaintiffs sufficiently stated a claim

under Chapter 93A, the Court necessarily found that the allegations in the second amended

complaint satisfied all three elements of the case-or-controversy requirement of Article III.  See

id.; Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (stating that standing is established by

allegations of injury, caused by the alleged misconduct, for which there is a legal remedy).

Moreover, in denying Defendants' motion to certify questions to the Massachusetts Supreme

Judicial Court, D. 108, the Court reiterated that "the alleged regulatory and statutory violations

Plaintiffs contend give rise to a Chapter 93A violation in addition to Defendants' alleged

noncompliance with [Section 15.06]."  D. 147.

Nor does the evidence produced in discovery thus far cited by EF Tours show that the

Plaintiffs lack standing in fact.  Defendants argue that Plaintiffs contractually agreed "that their

respective Group Leaders could reschedule their educational tours and revise their specific

itineraries . . . including but not limited to changing the group's requested tour or travel date."  D.

158 at 13–14; see D. 158-2 at 2, 6–7; D. 158-3 at 2, 6–7.  The contracts Defendants point to,

however, do not necessarily support the inference that Plaintiffs agreed that the Group Leaders

could unilaterally reschedule the tours to the following year.  Under the International Booking

Conditions:

> EF strives to keep departure dates within two days of the requested date for tours
> departing October through April and within four days of the requested date for tours
> departing May through September. Your final tour itinerary and travel dates will be
> confirmed approximately two months prior to departure.

D. 158-2 at 2.  A similar provision governs domestic tours:

> EF makes every effort to ensure that the new departure date will be within one to two days
> of the requested dates. . . . In rare cases, it may be necessary to move dates by up to three
> days within the requested departure dates.

D. 158-3 at 2.  This language suggests that the contracts contemplated that any unilateral change to travel dates would be no more than a few days within a departure date.  Other provisions suggest that Plaintiffs' trips had a set departure date.  See D. 158-2 at 6 (defining cancellation rights in proximity to departure date); D. 158-3 at 6 (same).

Moreover, there is at least some suggestion that EF Tours, not any Group Leaders or the Plaintiffs, canceled or postponed the tours.  For example, in February and March 2020, EF Tours instructed certain Group Leaders that their trips were being canceled or postponed without a new departure date.  See D. 171-2 at 2 (stating "EF has decided to enact their Peace of Mind program and cancel all travel within North America . . . . EF has also made this decision for all groups traveling internationally"); D. 171-14 at 2 (stating "I spoke with our Tour Coordinator at EF yesterday and it is looking like due to the current situation with the coronavirus and its increasing spread, our trip will be postponed until next spring break 2021"); D. 171-17 at 2 (indicating recent conversation with EF tour liaison and that "we were given three options: 1) travel to a different country during the same dates, 2) postpone our travel until the summer, or 3) receive individual travel vouchers toward any EF product anytime in the future").

These emails support Plaintiffs' allegations that EF Tours, not the Group Leaders, made the decision to cancel or postpone the tours, that Plaintiffs requested refunds only after learning of this decision and that EF did not honor their requests to receive full refunds.  See D. 60 ¶¶ 37–39, 45–48, 58–61.  At a minimum, such allegations narrate a plausible claim for relief under Chapter 93A since such actions would have been *per se* unfair or deceptive acts as a violation of Section 15.06.  See D. 94 at 14.

Defendants also argue that the second amended complaint should be dismissed as to the entire putative class under Rule 12(b)(1) because "the Court will be unable to determine their

6

standing without an individualized inquiry to determine whether each of the individual travelers stood ready to participate in either their original educational tour or their tour as rescheduled." D. 158 at 18. However, this argument goes to the issue of class certification, which is a separate inquiry from standing and which the parties and the Court will address at a later date. See Lewis v. Casey, 518 U.S. 343, 357 (1996) (stating "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent") (alteration in original) (internal citation and quotation marks omitted).

While "it would 'put the cart before the horse' to read Rule 23 to require that a plaintiff demonstrate prior to class certification that each class member is injured," In re Asacol Antitrust Litig., 907 F.3d 42, 58 (1st Cir. 2018) (internal citation omitted), the Court recognizes that this case may implicate the efficiency and fairness issues raised in Asacol. In that case, a proposed class of union-sponsored benefit plans, purchasers of brand name ulcerative colitis drugs, alleged that the drugs' manufacturers suppressed generic entry for the drug by pulling it from the market while a new drug was introduced. Id. at 45–46. The First Circuit concluded that the proposed class did not meet the predominance requirement of class certification because the proposed class included consumers who did not sustain injury in fact for Article III standing purposes and who would have continued to purchase a brand drug for various reasons even if a cheaper, generic version had been available. Id. at 51. The court, noting that plaintiffs did not propose to rely on unrebutted testimony to eliminate the question of injury-in-fact before trial, rejected the plaintiffs' proposed claim review process because it would have deprived defendants the "meaningful opportunity to contest whether an individual would have, in fact, purchased a generic drug had one

been available."  Id. at 53; see In re Nexium Antitrust Litig., 777 F.3d 9, 20–21 (1st Cir. 2015)

(arguing that unrebutted testimony contained in affidavits would suffice as a mechanism for

identifying which proposed class members were and were not injured).  The court further noted:

> [T]his is not a case in which a very small absolute number of class members might
> be picked off in a manageable, individualized process at or before trial.  Rather, this
> is a case in which any class member may be uninjured, and there are apparently
> thousands who in fact suffered no injury.  The need to identify those individuals
> will predominate and render an adjudication unmanageable absent evidence . . . [of
> a] mechanism that can manageably remove uninjured persons from the class in a
> manner that protects the parties' rights.

Id. at 53–54 (citing Nexium, 777 F.3d at 30).

In sum, at this stage, the Named Plaintiffs have standing to assert claims on behalf of the

proposed class.  Should it prove impossible, however, to eliminate uninjured members of the

proposed class "in a manageable, individualized process at or before trial," the Court will be bound

to deny class certification under Asacol.  See id.

Accordingly, the Court DENIES Defendants' motion to dismiss.

**B.        Whether the Class Allegations Should Be Stricken as a Fail-Safe Class**

Plaintiffs' proposed class is defined as "all persons in the United States: (i) who purchased

travel services from EF Tours; (ii) for whom EF Tours failed to provide the purchased travel

services; and (iii) for whom EF Tours have not offered the option of electing a full cash refund of

the amount they paid for the undelivered travel services."  D. 60 at 14.  Defendants argue that

"[t]he allegations and the class definition in the [second amended complaint] cannot be construed

as anything but a 'fail-safe' class that cannot be certified" and that the Court should "strike the

class allegations pursuant to Federal Rules 12(f) and 23."  D. 158 at 24.

"One reason that a court may strike class allegations is that the proposed class, as defined

by the plaintiff, is 'fail-safe,' i.e., it defines its membership in terms of the defendant's liability."

8

Costa v. Dvinci Energy, Inc., 342 F.R.D. 38, 39–40 (D. Mass. 2022) (citing Nexium, 777 F.3d at

22). "Such classes are impermissible because they make it virtually impossible for the

[d]efendant[] to ever 'win' the case, with the intended class preclusive effects, as any class member

against whom [d]efendant succeeds is thereby excluded from the class." Id. at 40 (alterations in

original) (internal citation and quotation marks omitted). The First Circuit, however, has instructed

that "courts should exercise caution when striking class action allegations based solely on the

pleadings" because "such motions are narrow in scope, disfavored in practice, and not calculated

readily to invoke the court's discretion" and "striking a portion of a pleading is a drastic remedy

and . . . it is often sought by the movant simply as a dilatory or harassing tactic." Manning, 725

F.3d at 59 (alteration in original) (internal citations and quotation marks omitted). The First Circuit

further noted that:

> striking class allegations under Rule 12(f) is even more disfavored because it
> requires a reviewing court to preemptively terminate the class aspects of . . .
> litigation, solely on the basis of what is alleged in the complaint, and before
> plaintiffs are permitted to complete the discovery to which they would otherwise
> be entitled on questions relevant to class certification. Accordingly, a court should
> typically await the development of a factual record before determining whether the
> case should move forward on a representative basis unless it is obvious from the
> pleadings that the proceeding cannot possibly move forward on a classwide basis.

Id. (alteration in original) (internal citation omitted). "This is especially true because issues of

over-breadth and fail-safe definitions can and often should be solved by refining the class

definition rather than by flatly denying class certification on that basis." O'Hara v. Diageo-

Guinness, USA, Inc., 306 F. Supp. 3d 441, 468 (D. Mass. 2018) (internal citations and quotation

marks omitted).

At this juncture, it is "not obvious from the pleadings that the proceeding cannot possibly

move forward on a classwide basis," Manning, 725 F.3d at 59 (citation omitted), or that a potential

fail-safe issue cannot be solved by refining the class definition. O'Hara, 306 F. Supp. at 468

(citations omitted); see Pimentel v. City of Methuen, No. 17-cv-11921-FDS, 2019 WL 6699667, at *3 (D. Mass. Dec. 9, 2019) (noting that "[a] court may, in an exercise of its discretion, revise a proposed class definition to avoid the problem of a fail-safe class") (internal citation and quotation marks omitted).  Given that Plaintiffs have not filed a motion for class certification and the parties have not yet completed discovery before such motion will be filed, D. 170 at 19, the Court will "await the development of a factual record before determining whether the case should move forward on a representative basis."  Manning, 725 F.3d at 59.

Accordingly, the Court DENIES Defendants' motion to strike the class allegations.

## VI.    Conclusion

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss and to strike class allegations, D. 152.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge