UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELISSA DOUGLAS, THOMAS AIKINS, AND SARA KAHL, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>EF EDUCATION FIRST INTERNATIONAL, LTD., EF INSTITUTE FOR CULTURAL EXCHANGE, INC., AND EF EXPLORE AMERICA, INC.,<br><br>    Defendants. | No. 20-cv-11740-DJC |

**ORDER ON DEFENDANTS' MOTION TO COMPEL AND THOMAS AND PAPPASORN AIKINS' MOTION TO QUASH AND FOR A PROTECTIVE ORDER**

Cabell, U.S.M.J.

I. **Introduction**

The defendants, EF Education First International, LTD., EF Institute for Cultural Exchange, Inc., and EF Explore America, Inc. (collectively "EF"), move to compel discovery on whether third parties reimbursed the putative class action named plaintiffs, Melissa Douglas, Thomas Aikins ("Thomas"), and Sara Kahl (collectively, the "Plaintiffs"), the cost of the trips that they purchased from EF.  EF argues that this discovery is relevant to

the Plaintiffs' standing.[1]  (Dkt. No. 193).  Relatedly, in a separate motion, Thomas and his daughter Pappasorn Aikins ("Pappasorn") (collectively, the "Aikinses") move to quash two subpoenas that EF issued to their banks and for a protective order covering their bank records.  (Dkt. No. 203).  Both motions are opposed.  As explained more fully below, the court concludes that the discovery the defendants seek is not relevant to the Plaintiffs' standing.  The court accordingly DENIES EF's motion to compel and GRANTS IN PART the Aikinses' motion to quash and for a protective order.

## II. Background

### A. Underlying Dispute

EF consists of related companies that offer national and international trips to school groups.  EF's American headquarters is in Cambridge, Massachusetts.  The Plaintiffs purchased trips from EF for their children, trips that were originally scheduled to depart during the COVID-19 pandemic.

The Plaintiffs allege that EF canceled trips during the COVID-19 pandemic but then failed to offer consumers the three refund options required under 940 C.M.R. § 15.06, including a "cash" refund of "the fair market retail value of any undelivered, purchased travel service," all in violation of M.G.L. c. 93A.  The

---

[1] Although EF's motion purports to seek discovery from all the Plaintiffs, EF's memorandum focuses entirely on Thomas.

Plaintiffs seek to certify a class of "all persons in the United States: (i) who purchased travel services from EF Tours; (ii) for whom EF Tours failed to provide the purchased travel services; and (iii) for whom EF Tours have not offered the option of electing a full cash refund of the amount they paid for the undelivered travel services."  Class and merits discovery is underway.

    **B.   The Instant Motions**

EF seeks discovery as to whether the Plaintiffs received money or reimbursements from third parties for their EF trip purchases.  EF argues that if the Plaintiffs received enough money from third parties to cover the difference between the costs of the trip and the amounts that EF refunded, then the Plaintiffs were not "injured" and therefore do not have standing.

EF's basis for believing that the Plaintiffs may have received money from third parties comes from the following.  The Aikinses appeared in a news article on March 19, 2020, announcing that they wanted a full refund from EF because Pappasorn had worked for about 240 hours to pay for her trip.  This assertion was repeated in the operative complaint.  In his deposition, Thomas initially said that Pappasorn had fully reimbursed him for the money that he fronted her for the trip.  During the deposition, Thomas changed his mind twice, finally deciding that Pappasorn had reimbursed him all but $515.

3

EF subsequently moved to compel discovery on whether the Plaintiffs were reimbursed the cost of their trips by any third parties, including family members, credit card companies, or insurers. Following the Plaintiffs' opposition, EF subpoenaed two years of Thomas's and Pappasorn's bank records from Saco & Biddeford Savings Institution ("Saco") and TD Bank. Thomas and Pappasorn in turn moved to quash the subpoenas and for a protective order.

### III. Discussion

Parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "If a party objects to a discovery request, the requesting party may move to compel and bears the initial burden of showing the relevance of the information sought." *Culbreth v. Macri*, No. 19-CV-31-JD, 2020 WL 3868790, at *1 (D.N.H. July 9, 2020) (citing Fed. R. Civ. P. 37(a)(3)(B)) (other citations omitted). Similarly, a "party issuing [a] subpoena has the burden of establishing that the requested information is relevant to its claims or defenses." *Enargy Power (Shenzhen) Co. v. Xiaolong Wang*, Civil Action No. 13-11348-DJC, 2014 WL 4687784, at *2 (D. Mass. Sept. 17, 2014) (citing *Jee Family Holdings, LLC v. San Jorge Children's Healthcare, Inc.*, 297 F.R.D. 19, 20 (D.P.R. 2014)).

As the party that has moved to compel and issued the bank subpoenas, EF bears the burden of establishing that the requested discovery is relevant to a claim or defense. EF asserts that the discovery is relevant because it goes to the issue of standing. More specifically, EF asserts that (1) Thomas no longer has an injury, and thus no longer has standing, if Pappasorn reimbursed him the full cost of the trip, and (2) Thomas cannot bring the suit on Pappasorn's behalf because she was no longer a minor by the time the Plaintiffs filed the operative complaint in this case.[2] EF further argues that the court in any case does not have jurisdiction to quash the subpoena EF served on TD Bank. As discussed below, the court disagrees with EF's assertion on relevance. The court also declines to rule on the jurisdictional issue because it can and will issue a protective order covering the TD Bank documents.

A. **Requested Discovery's Relevance to Standing**

To establish Article III standing, a plaintiff must allege an actual controversy by showing "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable court decision." *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950

---

[2] At the hearing on these motions, EF acknowledged that, under its theory, Pappasorn would have standing to pursue a claim on her own behalf if she in fact reimbursed Thomas for the cost of her tour. (Dkt. No. 254, pp. 34:7-35:8).

(2019) (citation omitted). "Article III demands that an 'actual controversy' persist throughout all stages of litigation." *Id*. at 1951 (quotation omitted). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016), *as revised* (Feb. 9, 2016) (quoting *Genesis Healthcare Corp.*, 569 U.S. 66, 72 (2013)).

Here, EF argues that, assuming Pappasorn reimbursed Thomas the cost of the trip, it necessarily means that Thomas no longer has "a concrete and particularized injury," and thus no "personal stake in the outcome of the lawsuit."[3] EF further argues that any of the Plaintiffs who received reimbursements for the cost of their trips from third parties are no longer injured and therefore do not have standing to sue.

Under the collateral source rule, however, "[a] plaintiff does not lose standing to sue a [wrongdoer] just because a third party has already compensated her for the injury." *Merriam v. Demoulas*, Civil Action No. 11-10577-RWZ, 2013 WL 2422789, at *3 (D. Mass., June 3, 2013) (finding that plaintiff maintained standing notwithstanding complete remuneration from third party); *see also Donovan v. Philip Morris USA, Inc.*, 65 F. Supp. 3d 251,

---

[3] Relatedly, EF argues that Thomas could not bring this suit on Pappasorn's behalf because she is an adult.

6

279 (D. Mass. 2014) (applying collateral source rule to 93A claim). "The . . . rule 'generally states that "benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer do not diminish the damages otherwise recoverable from the wrongdoer."'" *Kaplan v. Fulton St. Brewery, LLC*, Civil Action No. 17-10227-JGD, 2018 WL 2187369, at *7 (D. Mass. May 11, 2018) (quoting *Merriam*, 2013 WL 2422789, at *3). Under the rule, a wrongdoer "is required to compensate the injured party for the fair value of the harm caused, and is not to benefit from either contractual arrangements of the injured party with insurers or from any gifts from others intended for the injured party." *Law v. Griffith*, 930 N.E.2d 126, 132 (Mass. 2010).

Here, the Plaintiffs have alleged a concrete injury, namely EF's failure to provide the option of a full refund when required under 940 C.M.R. § 15.06. *See Casavant v. Norwegian Cruise Line Ltd.*, 952 N.E.2d, 908, 912-13 (Mass. 2011) (where 93A regulation requires that a travel service provide a full refund, the failure to provide a full refund causes a loss to traveler). The injury is particularized to the Plaintiffs because, as the contracting parties, they would have been the ones to receive the full refunds from EF. EF argues that if the Plaintiffs received reimbursements from third parties, they have not suffered a loss, and therefore they have no injury sufficient to maintain standing. But payments from sources collateral to EF, like the Plaintiffs' children, do

7

not impact the amount that EF may owe to the Plaintiffs, which is the injury at issue.  Therefore, the discovery sought would not impact the Plaintiffs' standing.

As noted above, EF also argues that Thomas cannot pursue this action on Pappasorn's behalf because she is now an adult.  Of course, Thomas has never purported to bring a claim on Pappasorn's behalf, only his own.  Because, for the reasons explained, Thomas has standing to maintain his own claim even if Pappasorn reimbursed him for the cost of the trip, the court need not decide whether Thomas could (or could not) hypothetically bring a claim on behalf of his daughter.

Accordingly, the court finds that EF has not met its burden of proving that the requested discovery is relevant and for that reason DENIES the Motion to Compel.

**B.  The Saco and TD Bank Subpoenas**

EF seeks the subpoenaed bank records to determine whether Pappasorn fully reimbursed Thomas, and thus whether Thomas retains standing.  As discussed above, Thomas's standing is not impacted by any reimbursements from Pappasorn.  Therefore, EF has not met its burden to establish relevance and is not entitled to the bank records.  This ends the court's analysis with respect to the Saco subpoena, which the court will quash.

The TD bank subpoena, on the other hand, requires compliance outside of this court's jurisdiction.  EF directed the TD Bank

8

subpoena to TD Bank's registered agent in Maryland, with compliance required at EF's counsel's Washington, D.C. office. EF argues that this court does not have jurisdiction to quash the subpoena because compliance was required in D.C., and thus only the district court there can quash the subpoena. *See* Fed. R. Civ. P. 45(d)(3)(A) (setting out that "the court for the district where compliance was required" may quash a subpoena). It is unclear whether this court, as the issuing court, also has jurisdiction over the subpoena, but the court need not reach the issue because it may issue a protective order with the same effect.

The court must limit discovery where, as here, "it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). One way that the court may limit discover is through a protective order, that is, an order placing boundaries on discovery. *See* Fed. R. Civ. P. 26(c)(1). The protective order power rests with the presiding court regardless of where documents would be produced. *Katz v. Liberty Power Corp., LLC*, Civil Action No. 18-CV-10506-ADB, 2019 WL 957129, at *3 (D. Mass. Feb. 27, 2019) (noting that court may issue protective order covering documents when it does not have jurisdiction over subpoena seeking same documents).

Because EF has not shown that the TD bank records are relevant, the court issues a protective order forbidding EF from discovering them. *See* Fed. R. Civ. P. 26(c)(1)(A). Although this

9

order does not quash the subpoena, the order will prevent EF from successfully compelling compliance with the subpoena. *See In re Bestwall LLC*, 47 F.4th 233, 246 (3d Cir. 2022). The court further orders EF to provide TD Bank with a copy of this order.

## IV. Conclusion

For the foregoing reasons, EF's motion to compel is DENIED, and the Aikinses' motion to quash and for a protective order is GRANTED IN PART. The court quashes the subpoena issued to Saco and issues a protective order forbidding EF from discovering Thomas's and Pappasorn's TD Bank records.[4]

So Ordered.                              /s/ Donald L. Cabell
                                         DONALD L. CABELL, U.S.M.J.

DATED: May 10, 2023

---

[4] The Aikinses also sought an order that EF pay their costs and attorney's fees associated with bringing the motion to quash and for a protective order. After careful consideration, the court declines to award costs and attorney's fees.